IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-69002-JWC |
| CHARLES ANTONIO CROFF, | CHAPTER:  7 |
| Debtor. | JUDGE: JEFFERY W. CAVENDER |
| | |
| WELLS FARGO BANK, N.A. , | CONTESTED MATTER |
| Movant, | |
| v. | |
| CHARLES ANTONIO CROFF, Debtor S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1203, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 10:00 A.M., on September 9, 2021.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be

rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-69002-JWC |
| CHARLES ANTONIO CROFF, | CHAPTER:  7 |
| Debtor. | JUDGE:  JEFFERY W. CAVENDER |
| | CONTESTED MATTER |
| WELLS FARGO BANK, N.A., | |
| Movant, | |
| v. | |
| CHARLES ANTONIO CROFF, Debtor<br>S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

*If the debtor has been negatively impacted by COVID-19, the debtor may contact Wells Fargo Home Mortgage to discuss a personalized solution at 1-800-274-7025. Written attorney consent may be required to speak directly with the debtor about these options.*

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the Acknowledgment and Waiver of Borrower's Rights contained in a certain Security Deed, a copy of which is attached hereto and made a part hereof.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 4845 Price Street, Forest Park, Georgia 30297.

3.      Terms of the Debt Agreement were amended by a loan modification Agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor dated February 21, 2013 (the "Loan Modification Agreement")..

4.      There has been a default in payment of the monthly installments required pursuant to the Promissory Note. As of July 26, 2021, three (3) payments have been missed.

5.      The unpaid principal balance is $119,442.81, and interest is due thereon in accordance with the Promissory Note. Movant's total claim is approximately $120,595.52.

6.      Because there may be little or no value in the property over the amount owed on the property, Movant is not adequately protected and should be permitted to proceed under applicable non-bankruptcy law to enforce its remedies to obtain possession of the Property.

7.      Because there may be little or no equity in the property which could benefit the estate, the Trustee's interest should be abandoned.

8.      Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to proceed under applicable non-bankruptcy law to enforce its remedies to obtain possession of the Property. Movant also prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived, and for such other and further relief as is just and equitable.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

## NOTE

CROFF
Loan #
MIN
Case

DECEMBER 1, 2010             CONYERS             GEORGIA
[Date]                       [City]              [State]

4845 PRICE STREET, FOREST PARK, GA 30297
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **PRIMARY RESIDENTIAL MORTGAGE, INC.** and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED FORTY-SIX THOUSAND THIRTY-THREE AND 00/100** Dollars (U.S. **$146,033.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND THREE-EIGHTHS** percent (**4.375%**) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

#### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **FEBRUARY 1, 2011**. Any principal and interest remaining on the first day of **JANUARY, 2041**, will be due on that date, which is called the "Maturity Date."

#### (B) Place

Payment shall be made at **4750 WEST WILEY POST WAY, SALT LAKE CITY, UT 84116** or at such place as Lender may designate in writing by notice to Borrower.

#### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$729.12**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

#### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

36.23                        Page 1 of 3                  FHA Multistate Fixed Rate Note - 07/09



C.C

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [Specify] _____

**5. BORROWER'S RIGHT TO PREPAY**

    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

    **(A) Late Charge for Overdue Payments**

    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent **(4.000%)** of the overdue amount of each payment.

    **(B) Default**

    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C) Payment of Costs and Expenses**

    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____  12-1-11
- BORROWER -  CHARLES ANTONIO CROFF  -  DATE -

*[Sign Original Only]*

Pay to the order of:

**Wells Fargo Bank, N.A.**

Without Recourse

PRIMARY RESIDENTIAL MORTGAGE, INC.

_____
**JESSICA CORDOVA**
**DIRECTOR OF OPERATIONS**

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By _____
William R. Martin
**Vice President**

.. Recording Return to:

Morris Hardwick Schneider
1371 Dogwood Drive SW
Conyers, GA 30012

Prepared By:
CAROL SHEFFIELD
PRMI INC.
4750 WEST WILEY POST WAY
STE. 200
SALT LAKE CITY, UT 84116
(801) 596-8707

When Recorded Mail To:
PRIMARY RESIDENTIAL
MORTGAGE, INC.
4750 WEST WILEY POST WAY
STE. 200
SALT LAKE CITY, UT 84116
(801) 596-8707

FILED IN OFFICE
CLAYTON COUNTY, GEORGIA

2011 Jan. 26    9:56 A M
DATE                    TIME

Georgia Intangible Tax Paid
$ 439.50
Date  1-26-  2011
JACQULINE D. WILLS
Clerk, Clayton County

[Space Above This Line For Recording Data]

## SECURITY DEED

CROFF
Loan #
MIN
PIN: 12-208A-00A-0046
Case #

THIS SECURITY DEED ("Security Instrument") is given on **DECEMBER 1, 2010**. The grantor
is **CHARLES ANTONIO CROFF** ("Borrower"). This Security Instrument is given to Mortgage Electronic
Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-
MERS. **PRIMARY RESIDENTIAL MORTGAGE, INC.**, is which is organized and existing under the laws
of **NEVADA**, and whose address is **4750 WEST WILEY POST WAY, SALT LAKE CITY, UT 84116**
("Lender"). Borrower owes Lender the principal sum of **ONE HUNDRED FORTY-SIX THOUSAND
THIRTY-THREE AND 00/100** Dollars (U.S. **$146,033.00**). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full
debt, if not paid earlier, due and payable on **JANUARY 1, 2041**. This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and
convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and
assigns of MERS, with power of sale, the following described property located in **CLAYTON** County,
Georgia:
**LEGAL DESCRIPTION/EXHBIT A ATTACHED HERETO AND MADE A PART HEREOF.**

🌐 371.6                    Page 1 of 8                    FHA Georgia Security Deed - 10/08



BK09912PG0280

C.C

All that tract or parcel of land lying and being in Land Lot 208 of the 12th District, Clayton County, Georgia, being Lot 24, of Crown River FKA Shady Ridge Subdivision, as per plat thereof recorded in Plat Book 40, page 43-46, Clayton County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

which has the address of **4845 PRICE STREET, FOREST PARK**, Georgia **30297** ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender may pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds." ·

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amount held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its

BK0991PG281

C.C

acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, ad in form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of the principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower and in to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

371.6                                    Page 3 of 8                    FHA Georgia Security Deed - 10/08

BK0991 2PG282

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extend of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which ash priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the line by, or defends against the enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the line; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the line or take one or more of the actions set forth above within 10 days of the giving of the notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Gam-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in

371.6                          Page 4 of 8                 FHA Georgia Security Deed - 10/08

BK 0 9 9 1 2 PG 2 8 3

full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note are not to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account currently including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately proceeding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

371.6                              Page 5 of 8                    FHA Georgia Security Deed - 10/08

BK09912PG284

C.C

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provisions. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breech to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its right under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breech to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other rights or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale.

BK0991PG285

C.C

Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place under the terms designed in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such a conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq*.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Adjustable Rate Rider
☒ Planned Unit Development Rider    ☐ Graduated Payment Rider
☒ Other(s) [specify] **WAIVER OF BORROWER'S RIGHTS**

371.6                          Page  7  of  8                    FHA Georgia Security Deed - 10/08

C.C

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____  12-1-10
- BORROWER -  CHARLES ANTONIO CROFF  -  DATE -

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

Notary Public _____

_____ COUNTY

STATE OF _____ Georgia

My Commission Expires:

8/4/12

## PLANNED UNIT DEVELOPMENT RIDER



CROFF
Loan #
MIN:
Case #

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **1ST** day of **DECEMBER,
2010**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to **PRIMARY RESIDENTIAL MORTGAGE,
INC.** ("Lender") of the same date and covering the Property described in the Security Instrument
and located at: **4845 PRICE STREET, FOREST PARK, GA 30297** [Property Address].
The Property Address is a part of a planned unit development ("PUD") known as **CROWN RIVER
FKA SHADY RIDGE** [Name of Planned Unit Development].

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

    **A.** So long as the Owners Association (or equivalent entity holding title to
    common areas and facilities), acting as trustee for the homeowners, maintains,

✑ 50.8                              Page 1 of 2                    **FHA Multistate PUD Rider**
                                                                                     6/96



BK09912PG288

with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

**B.** Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

**C.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____  12-1-10
- BORROWER  -  CHARLES ANTONIO CROFF  -  DATE  -

## FACT Act Notice

CROFF
Loan #
MIN

Date: **DECEMBER 1, 2010**
Lender: **PRIMARY RESIDENTIAL MORTGAGE, INC.**
Borrower(s): **CHARLES ANTONIO CROFF**
Property Address:    **4845 PRICE STREET, FOREST PARK, GA 30297**

We (Lender) may report information about your (Borrower(s)) account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

FACTA Title II Sec. 217

By signing below, you acknowledge receipt of this Notice.

12-1-10

- BORROWER - CHARLES ANTONIO CROFF    - DATE -

DocuTech Form 1553
  4387.5                                    Page 1 of 1                                    Rev. 07/04



BK09912PG290

After Recording Return To:
**PRIMARY RESIDENTIAL MORTGAGE,
INC.
4750 WEST WILEY POST WAY STE.
200
SALT LAKE CITY, UT 84116**
ATTENTION:

Prepared By:
**CAROL SHEFFIELD
PRMI INC.
4750 WEST WILEY POST WAY STE.
200
SALT LAKE CITY, UT 84116
(801) 596-8707**

## WAIVER OF BORROWER'S RIGHTS

CROFF
Loan #
MIN:
Case #

GRANTOR: **CHARLES ANTONIO CROFF**

LENDER: **PRIMARY RESIDENTIAL MORTGAGE, INC.**

DATE OF SECURITY DEED: **DECEMBER 1, 2010**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF: (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES. THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH

DocuTech Form 1086 (GA)
1009.12                                    Page  1  of  3                                    Rev. 04/02



BK0991PG291

AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS
PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED
AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING
THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR
HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A
BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE
INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_____    12-1-10
- BORROWER  -  CHARLES ANTONIO CROFF   -  DATE -

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 8/4/12



BK09912PG292

DocuTech Form 1086 (GA)
⬧ 1009.12                          Page 2 of 3                          Rev. 04/02

**CLOSING ATTORNEY'S AFFIDAVIT**

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Closing Attorney

Sworn to and subscribed before me on December 1, 2010

Notary Public

My Commission Expires:  1-1-2011



DocuTech Form 1086 (GA)
1009.12                                    Page 3 of 3                                    Rev. 04/02

C-C

**GEORGIA**

| | |
|---|---|
| **Grantor:** | Charles Antonio Croff |
| **Lender:** | Primary Residential Mortgage, Inc. DBA Element Funding |
| **Date of Security Deed:** | December 1, 2010 |

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the premises by nonjudicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof; (2) waives any and all rights which Grantor may have under the fifth and fourteenth amendments to the Constitution of the United States, the various provisions of the constitution for the several states, or by reason of any other applicable law to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided hereof; (3) acknowledges that Grantor has read this deed and specifically this paragraph and any and all questions regarding the legal effect of said deed and its provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this deed; (4) acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained-for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

Read and agreed by Grantor:

Signed, sealed and delivered in the presence of:

Witness

Notary Public
My Commission Expires:

Borrower(s)

Charles Antonio Croff

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights".

Based on said review with and explanation to the Borrower(s) it is my opinion that borrower(s) knowingly, intentionally and willingly executed the Waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

Notary Public
My Commission Expires:

Morris|Hardwick|Schneider, LLC

Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

Charles Antonio Croff

BK09912PG2294



FILED
CLAYTON CO., GA

2012 FEB -3  AM 9: 35

JACOULINE D. WILLS
CLERK SUPERIOR COURT
2 848

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: DEFAULT ASSIGNMENT, WELLS FARGO BANK, N.A. MAC: X9999-018 PO BOX
1629, MINNEAPOLIS, MN  55440-9790

## CORPORATE ASSIGNMENT OF SECURITY DEED

Clayton, Georgia
"CROFF"
SELLER'S LENDER ID#

MERS #                        IS #

Date of Assignment: January 30th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PRIMARY
RESIDENTIAL MORTGAGE, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501,
1901 E VOORHEES ST STE C., DANVILLE, IL  61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: CHARLES ANTONIO CROFF  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR PRIMARY RESIDENTIAL MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS
Date of Security Deed: 12/01/2010 Recorded: 01/26/2011 in Book/Reel/Liber: 09912 Page/Folio: 280  In the
County of Clayton, State of Georgia.

Property Address: 4845 PRICE STREET, FOREST PARK, GA  30297

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $146,033.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PRIMARY RESIDENTIAL
MORTGAGE, INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On _31 Jan 2012_

By: _____
    Chun Harris
Assistant Secretary

SEAL

WITNESS                                    WITNESS

_____                      _____
Bhavdip Chauhan                            Ryan Amato

STATE OF Minnesota
COUNTY OF Dakota                Angela Marie Williams

On _1/31/2012_, before me, _____, a Notary Public in Dakota County in the
State of Minnesota, personally appeared _Chun Harris_, Assistant Secretary, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Angela Marie Williams
Notary Expires: 1/31/2017

ANGELA MARIE WILLIAMS
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2017

(This area for notarial seal)

BK 10069 PG331



Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, Al. 35209

Tel: 877 913 3376 Toll Free

LOAN MODIFICATION AGREEMENT
LOAN NUMBER:
PROPERTY ADDRESS 4845 Price Street
                 Forest Park GA 30297-1959

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
February 21, 2013, by and between Charles Antonio Croff
                        (the "Borrower(s)") and
Wells Fargo Bank, N. A. (the "Lender",
together with the Borrower(s), the "Parties").

WITNESSETH

WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 12/01/2010.)
1.   BALANCE. As of February 21, 2013, the amount payable under the Note
and Security Instrument (the "Unpaid Balance") is U.S.
$ 141,528.82.
2.   EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
     A. The current contractual due date has been extended from 12-01-12
     to 05/01/2013. The first modified contractual due date is on
     05/01/2013.
     B. The maturity date has been extended from 01-41 (month/year) to
     04/01/2043.
     C. The amount of interest to be included (capitalized) will be U.S.
     $ 2,579.95.
     The amount of the Escrow Advance to be capitalized will be U.S.
     $1,611.82.
     The amount of Recoverable Expenses* to be capitalized will be
     U.S. $0.00.
     The modified Unpaid Principal Balance is U.S. $ 145,720.59.
     * Recoverable Expenses may include, but are not limited to: Title,
     Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
     Property Inspections

LM521/IBT/Pg1

Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



**Wells Fargo Home Mortgage**
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance of U.S. $ 145,720.59. The Borrower(s) promises to make monthly payments of principal and interest of U.S. $ 634.19, at a yearly rate of 3.250%, not including any escrow deposit, if applicable. If on the maturity date the Borrower(s) still owes an amount under the Note and Security Instrument, as amended by this Agreement, Borrower(s) will pay this amount in full on the maturity date.

E. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

3.   NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.
4.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.
5.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).
6.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.
7. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.
8.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

LM521/IBT/Pg2

Together we'll go far



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

9. This Agreement is conditioned upon the receipt of the 1-4 Family
Modification Agreement Rider Assignment of Rents, if included, specified
in the attached cover letter, which is incorporated herein by reference.
10.   That (he/she/they) (is/are) the Borrower(s) on the above-referenced
Mortgage Loan serviced by Wells Fargo Bank, N. A. .

That (he/she/they) have experienced a financial hardship or change in
financial circumstances since the origination of (his/her/their)
Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the
Mortgage Loan in order to obtain a loan modification.

CORRECTION AGREEMENT. The undersigned borrower(s), for and in
consideration of the approval, closing and funding of this
Modification, hereby grants Wells Fargo Bank, N. A. , as
lender, limited power of attorney to correct and/or initial all
typographical or clerical errors discovered in the Modification
Agreement required to be signed. In the event this limited power of
attorney is exercised, the undersigned will be notified and receive
a copy of the document executed or initialed on their behalf. This
provision may not be used to modify the interest rate, modify the
term, modify the outstanding principal balance or modify the
undersigned's monthly principal and interest payments as modified by
this Agreement. Any of these specified changes must be executed
directly by the undersigned. This limited power of attorney shall
automatically terminate in 120 days from the closing date of the
undersigned's Modification. **CAC** _____ (Borrower(s) initial)

11. CONSENT TO DISCLOSE PERSONAL INFORMATION
I consent to the disclosure of my personal information, including the
terms of this modification, to any investor, owner, servicer, insurer
or guarantor who owns, services, insures or guarantees my first lien
account for purposes related to the second mortgage Consumer Relief
Program. I also consent to the disclosure of my personal information to
any entity that performs support services for the second mortgage
Consumer Relief Program, including marketing, survey, research or other
borrower outreach, data processing and technical systems consulting.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as
the date first above written.

By signing this Agreement I hereby consent to being contacted concerning
this loan at any cellular or mobile telephone number I may have. This
includes text messages and telephone calls including the use of
automated dialing systems to contact my cellular or mobile telephone.
You will not be billed by your cellular or mobile carrier for any text
messages you may receive from Wells Fargo, however, any call placed or text
to your cellular or mobile phone will incur normal airtime charges
assessed by your mobile carrier.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel:  877 913 3376 Toll Free

Together we'll go far



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

Dated, as of this 1st day of _____March_____, 20 13 .

_____          _____
Charles Antonio Croff                        Signature
Signature

_____ 3-15-13
Wells Fargo Bank, N. A.

Name: ____**Kenya Blackmon**____
          Vice President Loan Documentation
Its: _____

LM527/IBT/Pg4

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

Together we'll go far



**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:                                                    Case No. 18-69002-JWC

CHARLES ANTONIO CROFF,                 Chapter 7

          Debtor.

**CERTIFICATE OF SERVICE**

This is to certify that on this day I electronically filed the foregoing **Notice of Hearing and Motion for Relief from the Automatic Stay** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Shannon Charlmane Worthy                      S. Gregory Hays

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties set forth below at the address shown for each.

Charles Antonio Croff
4845 Price Street
Forest Park, GA 30297

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: August 9, 2021

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400 / Fax: (619) 590-1385
Email: bjordan@aldridgepite.com