IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-69002-JWC |
| CHARLES ANTONIO CROFF, | CHAPTER:  7 |
| Debtor. | JUDGE: JEFFERY W. CAVENDER |
| WELLS FARGO BANK, N.A. , | CONTESTED MATTER |
| Movant, | |
| v. | |
| CHARLES ANTONIO CROFF, Debtor | |
| S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Wells Fargo Bank, N.A. has filed a Motion to Modify Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion at the following number: toll-free number: 833-568-8864; meeting id 160 459 5648, at 10:00 A. M. on April 7, 2022 in Courtroom 1203, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including

addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Evan Durkovic, Bar No.: 948332
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: edurkovic@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

CHARLES ANTONIO CROFF,

Debtor.

WELLS FARGO BANK, N.A. ,

Movant,

v.

CHARLES ANTONIO CROFF, Debtor
S. GREGORY HAYS, Trustee,

Respondent(s).

CASE NO. 18-69002-jwc

CHAPTER: 7

JUDGE: JEFFERY W. CAVENDER

CONTESTED MATTER

<u>MOTION TO MODIFY AUTOMATIC STAY</u>

COMES NOW Movant named above and shows this Court the following:

1.    Wells Fargo Bank, N.A. ("Movant") respectfully moves pursuant to Federal Rule of Bankruptcy Procedure 4001(a) and 11 U.S.C. § 362(d), 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), for an order modifying the automatic stay of 11 U.S.C. § 362(a) as to certain real property commonly known as 4845 Price Street, Forest Park, Georgia 30297.

2.    On or about December 1, 2010, Charles Antonio Croff, ("Debtor")/("Borrowers") executed a Note in the principal sum of $146,033.00 (the "Note"), which was made payable to Primary Residential Mortgage, Inc.. The Note is endorsed and payable in blank. A copy of the Note is attached as Exhibit A.

3.    The Note is secured by a Security Deed (the "Security Deed") encumbering the property.[1] A copy of the Security Deed is attached as Exhibit B.

---

[1] The Note and Security Deed are collectively referred to herein as the "Loan."

4.        On or about September 8, 2021, Debtor executed a Note in the principal sum of $5,058.85 (the "Subordinate Note"), which was made payable to Secretary of Housing and Urban Development. The Subordinate Note is for delinquent amounts owing under the Note that are to be repaid on the Note's maturity date or earlier if one of the criteria set forth in the Subordinate Note are met. A copy of the Subordinate Note is attached as Exhibit C.

5.        The Subordinate Note is secured by a Security Deed (the "Subordinate Security Deed") encumbering the property.[2]  A copy of the "Subordinate Security Deed is attached as Exhibit D.

6.        Movant believes that it is the parties' best interest to ratify the Subordinate Loan and seeks approval retroactively.

7.        Further, this motion is made pursuant to 11 U.S.C. § 362(d)(1) for the limited purposes of ratifying the Subordinate Loan and permitting Movant to record the Subordinate Security Deed in the public records.

8.        WHEREFORE, Movant respectfully prays for an Order of this court modifying the automatic stay of 11 U.S.C. § 362(a) to ratify the Subordinate Loan, and allow Movant (and any successors or assigns) to record the Subordinate Security Deed in the public records and granting Movant such other and further relief as the court deems just and proper.

Evan Durkovic, Bar No.: 948332
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: edurkovic@aldridgepite.com

---

[2] The Subordinate Note and Subordinate Security Deed are collectively referred to herein as the "Subordinate Loan."

[redacted]

# NOTE

CROFF[redacted]
Loan #:[redacted]
MIN:[redacted]
Case[redacted]

| DECEMBER 1, 2010 | CONYERS | GEORGIA |
|---|---|---|
| [Date] | [City] | [State] |

4845 PRICE STREET, FOREST PARK, GA 30297
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means PRIMARY RESIDENTIAL MORTGAGE, INC. and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED FORTY-SIX THOUSAND THIRTY-THREE AND 00/100 Dollars (U.S. $146,033.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND THREE-EIGHTHS percent (4.375%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on FEBRUARY 1, 2011. Any principal and interest remaining on the first day of JANUARY, 2041, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 4750 WEST WILEY POST WAY, SALT LAKE CITY, UT 84116 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $729.12. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

[redacted]

**EXHIBIT A**

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [Specify] _____

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (**4.000%**) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

---

36.23                                    Page 2 of 3                          FHA Multistate Fixed Rate Note - 07/09

**EXHIBIT A**


BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____   _12-1-11_
- BORROWER -   CHARLES ANTONIO CROFF   - DATE -

*[Sign Original Only]*

Pay to the order of:

    Wells Fargo Bank, N.A.

Without Recourse

PRIMARY RESIDENTIAL MORTGAGE, INC.

_____
JESSICA CORDOVA
DIRECTOR OF OPERATIONS

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By _____
William R. Martin
Vice President

**EXHIBIT A**

FILED IN OFFICE
CLAYTON COUNTY, GEORGIA

2011 Jan. 26   9:56A M
DATE              TIME

CLERK SUPERIOR COURT
101651

... Recording Return to:

Morris Hardwick Schneider
1371 Dogwood Drive SW
Conyers, GA 30012

Prepared By:
CAROL SHEFFIELD
PRMI INC.
4750 WEST WILEY POST WAY
STE. 200
SALT LAKE CITY, UT 84116
(801) 596-8707

When Recorded Mail To:
PRIMARY RESIDENTIAL
MORTGAGE, INC.
4750 WEST WILEY POST WAY
STE. 200
SALT LAKE CITY, UT 84116
(801) 596-8707

Georgia Intangible Tax Paid
$ 439.50
Date  1-26-  2011
JACQULINE D. WILLS
Clerk, Clayton County

[Space Above This Line For Recording Data]

## SECURITY DEED

CROFF
Loan #
MIN
PIN: 12-208A-00A-0046
Case #

THIS SECURITY DEED ("Security Instrument") is given on **DECEMBER 1, 2010**. The grantor is **CHARLES ANTONIO CROFF** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-MERS. **PRIMARY RESIDENTIAL MORTGAGE, INC.**, is which is organized and existing under the laws of **NEVADA**, and whose address is **4750 WEST WILEY POST WAY, SALT LAKE CITY, UT 84116** ("Lender"). Borrower owes Lender the principal sum of **ONE HUNDRED FORTY-SIX THOUSAND THIRTY-THREE AND 00/100** Dollars (U.S. **$146,033.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **JANUARY 1, 2041**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in **CLAYTON** County, Georgia:

**LEGAL DESCRIPTION/EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.**

371.6                           Page 1 of 8                    FHA Georgia Security Deed - 10/08



BK09912PG0280

# EXHIBIT B
C.C

All that tract or parcel of land lying and being in Land Lot 208 of the 12th District, Clayton County, Georgia, being Lot 24, of Crown River FKA Shady Ridge Subdivision, as per plat thereof recorded in Plat Book 40, page 43-46, Clayton County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

which has the address of **4845 PRICE STREET, FOREST PARK**, Georgia 30297 ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender may pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amount held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its

BK0991PG281

**EXHIBIT B**

C.C

acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, ad in form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of the principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower and in to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

371.6                              Page 3 of 8                    FHA Georgia Security Deed - 10/08

BK09912PG282

**EXHIBIT B**

L.L

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extend of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which ash priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the line by, or defends against the enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the line; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the line or take one or more of the actions set forth above within 10 days of the giving of the notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in

371.6                              Page 4 of 8                    FHA Georgia Security Deed - 10/08

BK0991 2PG283

**EXHIBIT B**

███████████████

full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note are not to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account currently including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately proceeding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

👁 371.6                          Page  5  of  8                      **FHA Georgia Security Deed - 10/08**

BK09912PG284

**EXHIBIT B**

C.C

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provisions. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its right under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other rights or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale.



BK0991 PG285

**EXHIBIT B**

C.C

Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place under the terms designed in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such a conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Adjustable Rate Rider |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |
| ☒ Other(s) [specify] **WAIVER OF BORROWER'S RIGHTS** | | |

🐢 371.6                    Page 7 of 8                    FHA Georgia Security Deed - 10/08

**EXHIBIT B**

*C.C*

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____  12-1-10
- BORROWER -  CHARLES ANTONIO CROFF  - DATE -

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

STATE OF _____  DeKalb COUNTY
My Commission Expires:  Georgia

8/4/12

371.6                    Page 8 of 8            FHA Georgia Security Deed - 10/88

BK0991PG287

**EXHIBIT B**

## PLANNED UNIT DEVELOPMENT RIDER



CROFF
Loan #
MIN:
Case #

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **1ST** day of **DECEMBER,
2010**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to **PRIMARY RESIDENTIAL MORTGAGE,
INC.** ("Lender") of the same date and covering the Property described in the Security Instrument
and located at: **4845 PRICE STREET, FOREST PARK, GA 30297** [Property Address].
The Property Address is a part of a planned unit development ("PUD") known as **CROWN RIVER
FKA SHADY RIDGE** [Name of Planned Unit Development].

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to
common areas and facilities), acting as trustee for the homeowners, maintains,

   50.8                                  Page 1 of 2                    **FHA Multistate PUD Rider
6/96**



BK0991 2PG288

**EXHIBIT B**

LC

with a generally accepted insurance carrier, a "master" or "blanket" policy insuring
the property located in the PUD, including all improvements now existing or
hereafter erected on the mortgaged premises, and such policy is satisfactory to
Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included
within the term "extended coverage," and loss by flood, to the extent required by
the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security
Instrument for the monthly payment to Lender of one-twelfth of the yearly
premium installments for hazard insurance on the Property, and (ii) Borrower's
obligation under Paragraph 4 of this Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the
required coverage is provided by the Owners Association policy. Borrower shall
give Lender prompt notice of any lapse in required hazard insurance coverage and
of any loss occurring from a hazard. In the event of a distribution of hazard
insurance proceeds in lieu of restoration or repair following a loss to the Property
or to common areas and facilities of the PUD, any proceeds payable to Borrower
are hereby assigned and shall be paid to Lender for application to the sums secured
by this Security Instrument, with any excess paid to the entity legally entitled
thereto.

**B.** Borrower promises to pay all dues and assessments imposed pursuant to the
legal instruments creating and governing the PUD.

**C.** If Borrower does not pay PUD dues and assessments when due, then Lender
may pay them. Any amounts disbursed by Lender under this paragraph C shall
become additional debt of Borrower secured by the Security Instrument. Unless
Borrower and Lender agree to other terms of payment, these amounts shall bear
interest from the date of disbursement at the Note rate and shall be payable, with
interest, upon notice from Lender to Borrower requesting payment.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions
contained in this PUD Rider.

_____   12-1-16
- BORROWER -   CHARLES ANTONIO CROFF   - DATE -

50.8                     Page 2 of 2           **FHA Multistate PUD Rider**
                                                                        6/96

BK 0 9 9 I 2 PG 2 8 9

**EXHIBIT B**

## FACT Act Notice



CROFF
Loan #:
MIN

Date: **DECEMBER 1, 2010**

Lender: **PRIMARY RESIDENTIAL MORTGAGE, INC.**

Borrower(s): **CHARLES ANTONIO CROFF**

Property Address: **4845 PRICE STREET, FOREST PARK, GA 30297**

We (Lender) may report information about your (Borrower(s)) account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

FACTA Title II Sec. 217

By signing below, you acknowledge receipt of this Notice.

- BORROWER - CHARLES ANTONIO CROFF   - DATE -

DocuTech Form 1553
4387.5                                    Page 1 of 1                                    Rev. 07/04

BK0991 2P6290

# EXHIBIT B

After Recording Return To:
PRIMARY RESIDENTIAL MORTGAGE,
INC.
4750 WEST WILEY POST WAY STE.
200
SALT LAKE CITY, UT 84116
ATTENTION:

Prepared By:
CAROL SHEFFIELD
PRMI INC.
4750 WEST WILEY POST WAY STE.
200
SALT LAKE CITY, UT 84116
(801) 596-8707

## WAIVER OF BORROWER'S RIGHTS

CROFF
Loan #
MIN:
Case

GRANTOR: CHARLES ANTONIO CROFF

LENDER: PRIMARY RESIDENTIAL MORTGAGE, INC.

DATE OF SECURITY DEED: DECEMBER 1, 2010

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF: (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES. THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH

DocuTech Form 1086 (GA)
1009.12                     Page 1 of 3                     Rev. 04/02





BK0991PG291

**EXHIBIT B**

AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS
PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED
AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING
THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR
HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A
BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE
INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_____  12-1-10
- BORROWER - CHARLES ANTONIO CROFF   - DATE -

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 8/4/12



BK09912PG292

DocuTech Form 1086 (GA)
1009.12                          Page 2 of 3                          Rev. 04/02

**EXHIBIT B**

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
Closing Attorney

Sworn to and subscribed before me on _December 1, 2010_
_____
Notary Public

My Commission Expires: _1-1-2011_



BK0991 2PG293

**EXHIBIT B**

**GEORGIA**

| | |
|---|---|
| **Grantor:** | Charles Antonio Croff |
| **Lender:** | Primary Residential Mortgage, Inc. DBA Element Funding |
| **Date of Security Deed:** | December 1, 2010 |

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the premises by nonjudicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof; (2) waives any and all rights which Grantor may have under the fifth and fourteenth amendments to the Constitution of the United States, the various provisions of the constitution for the several states, or by reason of any other applicable law to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided hereof; (3) acknowledges that Grantor has read this deed and specifically this paragraph and any and all questions regarding the legal effect of said deed and its provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this deed; (4) acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained-for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

Read and agreed by Grantor:

Signed, sealed and delivered in the presence of:

Borrower(s)

_____
Witness

Charles Antonio Croff

_____
Notary Public
My Commission Expires:

SEBASTIAN ERICSSON
NOTARY
My Comm. Expires
August 4, 2012
DEKALB COUNTY, GEORGIA
PUBLIC

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights".

Based on said review with and explanation to the Borrower(s) it is my opinion that borrower(s) knowingly, intentionally and willingly executed the Waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Notary Public
My Commission Expires:

ANGIE DOLBEA
NOTARY
My Comm. Expires
January 1, 2011
NEWTON COUNTY, GEORGIA
PUBLIC

Morris|Hardwick|Schneider, LLC

_____
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
Charles Antonio Croff

BK0991 PG2294

**EXHIBIT B**

CYD-100906015
11/30/10 @ 04:46 PM

FHA Case No. ███████████

# PARTIAL CLAIMS PROMISSORY NOTE

**SEPTEMBER 8, 2021**            **FOREST PARK**            **GEORGIA**
[Effective Date]                 [City]                     [State]

**4845 PRICE STREET, FOREST PARK, GEORGIA 30297**
[Property Address]

**1.  PARTIES.**

   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY**

   In return for a loan received from Lender, Borrower promises to pay the principal sum of **FIVE THOUSAND FIFTY-EIGHT DOLLARS AND 85 CENTS** (U.S. **$5,058.85**), to the order of Lender. Due and payable upon one of the following events below:

**3.  MANNER OF PAYMENT**

   **(A) Time.**
   On **APRIL 1, 2043**;or if earlier, when the first of the following events occurs:

   (i) The Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or
   (ii) The maturity date of the primary Note has been accelerated, or
   (iii) The Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or
   (iv) The property is not occupied by the purchaser as his or her principal residence.

   **(B) Place.**
   Payment shall be made at the following address

<div align="center">

**U.S. Department of HUD**
**c/o Novad Management Consulting,**
**Shepard's Mall**
**2401 NW 23rd St, Suite 1A1**
**Oklahoma City, OK 73107**
**Toll-Free: (877)-622-8525**
**Fax Number: (800) 489-1733**

</div>

**or any such other place as Lender may designate in writing by notice to Borrower.**

**4.  BORROWER'S RIGHT TO PREPAY**

   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**5.  WAIVERS**

   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**6.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these



**EXHIBIT C**

obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

7.  **REPRESENTATIONS:**

    (A).    I acknowledge and understand that I am not obligated to enter into this note, and that I am entering into this Note at my request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the property.

    (B).    I understand that I have no personal obligation to repay the debt secure by the property if said debt is discharged in bankruptcy without a valid reaffirmation agreement. _CAC_ **(AFTER READING THIS PARAGRAPH, BORROWER MUST INITIAL HERE)**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____          9-15-2021
**CHARLES ANTONIO CROFF**                                  **Date**

**EXHIBIT C**

STATE OF **GEORGIA**
**COUNTY OF CLAYTON**
Wells Fargo Loan# ████████

FHA Case No.:████████

Effective Date: **SEPTEMBER 8, 2021**
Borrower(s): **CHARLES ANTONIO CROFF**
Property Address: **4845 PRICE STREET, FOREST PARK, GEORGIA 30297**

# COMPLIANCE AGREEMENT

Borrowers: **CHARLES ANTONIO CROFF**

In consideration of the Secretary of Housing and Urban Development and it successors and assigns ("Lender") extending funds ("Loan") in connection with the HUD Partial Claim associated with the property located at **4845 PRICE STREET, FOREST PARK, GEORGIA 30297** the undersigned Borrower agrees, upon request of Lender or upon request of persons acting on behalf of Lender, to fully cooperate with Lender to correct any inaccurate terms or provisions of any and all of the documents associated with the HUD Partial Claim transaction. Borrower agrees to execute such documents or take such action as Lender reasonably may deem necessary or desirable to remedy any inaccuracy or mistake, including, without limitation, executing such documents or taking such action as will enable Lender to sell, convey, seek guaranty, or market the Loan to any entity, including, without limitation, the Department of Housing and Urban Development.

Borrower further agrees to comply with any said requests within a reasonable period of time as specified by Lender. Failure to comply shall constitute default under the Note and Security Instrument evidencing the Loan and Lender may pursue its available remedies.

_____      9-15-2021
**CHARLES ANTONIO CROFF**                              **Date**

Wells  Fargo  Custom  Partial  Claims  Loan  Modification  Agreement
████████

Page 1



# EXHIBIT C

Date: **SEPTEMBER 8, 2021**
Loan Number ███████████
Lender: **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

Borrower: **CHARLES ANTONIO CROFF**

Property Address: **4845 PRICE STREET, FOREST PARK, GEORGIA 30297**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____                                 9-15-2021
Borrower                                                                       Date
**CHARLES ANTONIO CROFF**

Wells  Fargo  Custom  Partial  Claims  Loan  Modification
████████████████████████                                    ████████████████

Page 9

**EXHIBIT C**

Date: **SEPTEMBER 8, 2021**
Loan Number: ███████████
Lender: **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

Borrower: **CHARLES ANTONIO CROFF**

Property Address: **4845 PRICE STREET, FOREST PARK, GEORGIA 30297**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____    9-15-2021
**CHARLES ANTONIO CROFF**                                         Date

Wells Fargo Custom Partial Claims Loan Modification

███████████████████

Page 10

**EXHIBIT C**

This Document Prepared By:
**MARY MAURIGI**
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**FAMS – DTO RECORDING**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA  92707-9991**

██████████████

_____[Space Above This Line for Recording Data]_____

██████████████

# PARTIAL CLAIMS MORTGAGE

### GEORGIA STATE CODE: 560-11-8.14
### EXEMPT SECRETARY OF HOUSING AND URBAN DEVELOPMENT

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on **SEPTEMBER 8, 2021**. The mortgagor is **CHARLES ANTONIO CROFF** ("Borrower"), whose address is **4845 PRICE STREET, FOREST PARK, GEORGIA 30297**. This Security Instrument is given to the **Secretary of Housing and Urban Development**, whose address is **451 Seventh Street SW, Washington, DC 20410** ("Lender").  Borrower owes Lender the principal sum of **FIVE THOUSAND FIFTY-EIGHT DOLLARS AND 85 CENTS** Dollars (U.S. **$5,058.85**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **APRIL 1, 2043**.

Wells  Fargo  Custom  Partial  Claims  Loan  Modification

██████████████                                          ██████████████

Page 1

**EXHIBIT D**

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the COUNTY of **CLAYTON**, State of **GEORGIA**:

which has the address of, **4845 PRICE STREET, FOREST PARK, GEORGIA 30297** (herein "Property Address");

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Tax Parcel No. **12208A A046**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

    **2. Borrower Not Released; Forbearance By Lender Not a Waiver**. Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

Wells Fargo Custom Partial Claims Loan Modification

**EXHIBIT D**

**3.   Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4.   Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5.   Governing Law; Severability.**  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6.   Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**7.   Acceleration: Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement of Borrower in this Security Instrument. The notice shall specify: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is given to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the

Wells  Fargo  Custom  Partial  Claims  Loan  Modification

**EXHIBIT D**

sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 7, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

**8. Bankruptcy Discharge.** If Borrower, subsequent to **DECEMBER 1, 2010**, receives a discharge in a Chapter 7 bankruptcy, and there is no valid reaffirmation agreement of the underlying debt. Lender will not attempt to re-establish any personal liability for the underlying debt.

**9. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request

Wells Fargo Custom Partial Claims Loan Modification



Page 4

**EXHIBIT D**

and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property.  Lender shall be subrogated to any and all rights, superior titles, liens and equities owed or claimed by any owner or holder of any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignments or are released by the holder thereof upon payment.

**10. Partial Invalidity.**  In event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.  In the event that any applicable law limiting the amount of interest or other charges permitted to be collected is interpreted so that any charge provided for in this Security Instrument or in the Note, whether considered separately or together with other charges that are considered

A part of this Security Instrument and Note transaction, violates such law by reason, such charge is hereby reduced to the extent necessary to eliminate such violation.  The amounts of such interest or other charges previously paid to Lender in excess of the amounts permitted by applicable law shall be applied by lender to reduce the principal of the indebtedness evidenced by the Note, or, at Lender's option, be refunded.

**11. Loan Charges.**  If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**12. Borrower's Authorization for Disclosure of Financial Information.**  Borrower hereby authorizes the holder of any mortgage, deed of trust or other encumbrance with a lien that has a priority over this Security Instrument to disclose any financial information requested in writing by the above-named Lender regarding Borrower's loan.   Such information may include, but shall not be limited to, the following information: current loan balance, loan status, delinquency notices, tax and insurance receipts, hazard insurance policies and flood insurance policies, and any other information deemed necessary in its sole discretion by Lender.

To the extent the lender may elect to do so, from time to time, the Borrower hereby authorizes Lender to cure wholly or in part any default or failure of performance under the terms of the prior Note and Security Instrument.  The Borrower hereby indemnifies and agrees to hold harmless any Lender acting in reliance upon this provision from any and all

Wells  Fargo  Custom  Partial  Claims  Loan  Modification

██████████████████████                                    ████████████████████

**EXHIBIT D**

liability and causes of action arising from actions taken pursuant to this provision, including, but not limited to, all attorney fees, costs and expenses incurred for any reason. This provision cannot be amended, revoked, superseded, or canceled prior to payment in full of the subordinate debt without the express written consent of the Lender. This provision of the Security Instrument may be continually used from time to time, and shall inure to the benefit of the Lender, its successors and assigns.

**13. Wavier of Notice of Intention and Accelerate.**  Borrower waives the right to notice of intention to require payment in full of all sums secured by this Security Instrument except as provided in paragraph 7.

Borrower must deliver to Wells Fargo Home Mortgage a properly signed HUD Partial Claim package, which includes, Partial Claims Promissory Note, Subordinate Deed of Trust, Notice of No Oral Agreements, and Errors and Omissions Compliance Agreement by **SEPTEMBER 23, 2021**. If Borrower does not return a properly signed HUD Partial Claim package by this date Wells Fargo Home Mortgage may deny or cancel the Partial Claim Agreement. If the Borrower returns a properly signed HUD Partial Claim package by said date, payments pursuant to the Partial Claim Agreement are due as outlined in this HUD Partial Claim package. Wells Fargo Home Mortgage may deny or cancel the Partial Claims Promissory Note if Borrower fails to make the first payment due as outlined in this HUD Partial Claim package.

Wells Fargo Custom Partial Claims Loan Modification

**EXHIBIT D**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument..

Borrower: **CHARLES ANTONIO CROFF**

9-15-2021
**Date**

_____ [Space Below This Line for Acknowledgments] _____

State of _Georgia_
County of _Clayton_ ss.

Signed, sealed and delivered on this _15th_ day of _September_ 2021.
_Charles_ in the presence of:

Unofficial Witness

Notary Public, state of Georgia

_Antoinette C. Holmes_
Printed Name

Document Prepared By
**MARY MAURIGI**
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**

May 28, 2022
My Commission Expires

Wells Fargo Custom Partial Claims Loan Modification

Page 7

**EXHIBIT D**

**EXHIBIT A**

**BORROWER(S): CHARLES ANTONIO CROFF**

**LOAN NUMBER** ███████████

**LEGAL DESCRIPTION:**

**THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF CLAYTON
AND STATE OF GEORGIA, AND DESCRIBED AS FOLLOWS:**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 208 OF THE 12 TH
DISTRICT, CLAYTON COUNTY, GEORGIA, BEING LOT 24, OF CROWN RIVER FKA SHADY
RIDGE SUBDIVISION, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 40, PAGE 43-46,
CLAYTON COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED
HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.**

**ALSO KNOWN AS: 4845 PRICE STREET, FOREST PARK, GEORGIA 30297**



Wells  Fargo  Custom  Partial  Claims  Loan  Modification
████████████████████                              ████████████████

Page 8

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

CHARLES ANTONIO CROFF,

        Debtor.

Case No. 18-69002-JWC

Chapter 7

**CERTIFICATE OF SERVICE**

This is to certify that on this day I electronically filed the foregoing **MOTION TO MODIFY AUTOMATIC STAY** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

S. Gregory Hays

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties set forth below at the address shown for each.

Charles Antonio Croff
4845 Price Street
Forest Park, GA 30297

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: March 15, 2022

Evan Durkovic, Bar No.: 948332
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: edurkovic@aldridgepite.com